# Birmingham National Bank *v.* Bradley.

### *Action upon a Bill of Exchange.*

1. *Bill of exchange and bank check; evidence as to alteration; general affirmative charge.*—In an action against the payee in a bill of exchange or bank check, which is alleged to have been altered and raised, where the issue is as to whether the paper was altered as to amount and payee before it was presented to and cashed by the plaintiff, and the evidence for the plaintiff was as clear as oral testimony and attendant circumstances could show that the bill of exchange or bank check was so altered, and it was further shown by the evidence of the plaintiff that it was entirely feasible to make such alteration without leaving any indication or trace of the change upon the paper, while the testimony for the defendant was to the effect that the paper it-

[Birmingham National Bank v. Bradley.]

self gave no indication whatever of any alteration, and that the alteration alleged could not have been made without leaving some indication of such change, the evidence to establish the practicability of such alteration being made without leaving any sign of the operation is not free from conflict; and, therefore, the plaintiff is not entitled to the general affirmative charge.

2. *Same; same; granting of new trial.*—In an action against the payee in a bill of exchange or bank check, which is alleged to have been altered and raised, where the issue is as to whether the paper was altered as to amount and payee before it was presented· to and cashed by the plaintiff, and the evidence that such alteration could be made by the use of chemicals in the obliteration of the original writing, and by the substitution therefor of other writing, in such manner as to defy detection, was so decided and overwhelming in its preponderance against the contrary conclusion reached by the jury, as to involve the conviction that the verdict was wrong and unjust, such verdict should be·set aside on plaintiff's motion for a new trial.

3. *Same; expert testimony as to alteration of check.*—Where, in an action against the payee of a bank check or bill of exchange, the issue is as to whether the paper could be altered in the way it was claimed by the plaintiff to have been altered, by the use of gas or acids or other chemicals, without leaving any indication or trace of the change, or showing that it had been tampered with, the only witness competent to testify as to such question is he who knows something about the effect of chemicals in the connection under inquiry, and a man without such knowledge is incompetent, although he may have had experience in the examination of checks and other papers, with a view to determine whether they, in fact, gave any indication in and of themselves, upon their faces, of having been tampered with.

4. *Argument of counsel to jury.*—Where, in the trial of a cause, there was no evidence as to propounding of interrogatories to an absent party, who was interested in the result of the suit, it is improper for counsel in his argument to the jury, in referring to such person, to state that "he was ominously silent; that interrogatories were propounded to him which he did not answer, or if he did answer, were not read to the jury."

5. *Same.*—In the argument of counsel to the jury, it is error to permit him to read to the jury interrogatories which were propounded, but which had never been introduced in evidence.

6. *Same.*—In an action against the payee of a bank check or bill of exchange alleged to have been raised, to recover the money paid on such check or bill of exchange, it is not error to allow counsel in his argument to the jury to refer to the possibility of the ultimate liability of the bank by which such check or bill of exchange was drawn, in the event that it was not proven to have been raised; such legal conclusion, so referred to, having a bearing upon the credibility of the officials of that bank, who were examined as witnesses in the case.

[Birmingham National Bank v. Bradley.]

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This is the third appeal in this case. There was no new testimony on the last trial, but the issue was narrowed down to the one question left open by this court in its decision on the former appeals. Most of the assignments of error have been substantially passed on by the court in its former decisions.—*Birmingham Nat. Bank v. Bradley*, 103 Ala. 109 ; *Ib.* 108 Ala. 205.

The appellant, the Birmingham National Bank, sued John G. Bradley, on a draft or New York exchange, for $4,000. It was alleged by the plaintiff that said draft was originally issued on February 23, 1892, by the Gate City National Bank of Atlanta on the National Park Bank of New York, payable to James Fix, in the sum of $2 ; that said check had been altered 'since the issuance by erasing the date, 2–23, and the figure 2, after the figures 189 , and rewriting the same date and figures exactly ; also changing the amount of said draft, both in the writing and figures from $2 to $4,000, and changing the name of the payee, James Fix, to "John G. Bradley." In fact it was alleged that every letter and figure in the check had been erased and altered, except the signature of A. W. Hill, whose name was signed to the check. It is alleged that in such altered condition, the defendant, John G. Bradley, indorsed said check or draft, and the plaintiff paid the same ; that payment by the drawee had been refused on account of such alleged alteration. It was further alleged that Bradley had been notified of the alleged alteration, and of the refusal to pay said check, and that after such notification Bradley promised to pay the same.

The plaintiff's complaint contains seven counts. The first count sets out substantially the allegations above set forth. The second count is about the same as the first count, except that it does not aver that payment of the check was refused, but that said check was duly credited to plaintiff by the National Park Bank ; and was afterwards charged back to plaintiff when the alleged alteration was discovered. The 4th, 5th and 6th counts are the common counts. The 7th is a new count added since the last trial of this case. It alleges no new material facts, but merely goes into a detailed and discussive statement of the evidence relied upon for a re-

covery by the plaintiff, and alleges a promise by the defendant to pay the said check after notification of the alleged alteration. The defendant pleaded the general issue and payment; but under the former rulings of this court the case was tried upon the general issue.

Under the opinion on the present appeal it is deemed unnecessary to set out in detail the facts of the case.

During the course of the argument before the jury by Daniel A. Greene, Esq., one of the attorneys for the defendant, he stated to the jury that the officers of the Gate City National Bank were interested on account of said check; that said Gate City National Bank was liable on account of said check to the plaintiff. To this part of the argument plaintiff objected, and duly excepted to the court overruling his objection. The said attorney for the defendant further argued to the jury that Lewis Redwine, cashier of the Gate City National Bank was ominously silent; that "interrogatories were propounded to him which were not answered, or if answered were not read to the jury by counsel for the plaintiff." To this portion of said attorney's argument the plaintiff objected, and duly excepted to the court's overruling its objection.

The bill of exceptions then recites: "After the above argument was concluded, B. M. Allen, the other attorney for the defendant, after commenting on the same line that Mr. Greene had followed, in reference to the liabilities of the officers of the Gate City National Bank, itself, he turned to the court and stated that he didn't want to do anything wrong, and wanted to know if he would be permitted to read to the jury the interrogatories that had been propounded to Redwine. The court then asked if plaintiff's counsel had any objection. Plaintiff's counsel said that they did object. Later on, however, Mr. Allen, attorney for the defendant, argued that it was a suspicious circumstance that Redwine had not been examined."

The plaintiff requested the court to give to the jury the following charge, and duly excepted to the court's refusal to give the same as asked: "If you believe the evidence, then you will find in favor of the plaintiff." There was verdict for the defendant. Thereupon the plaintiff made a motion for a new trial, upon the following grounds: 1st. That the general affirmative charge

requested by it should have been given. 2d. Because the verdict of the jury was contrary to the evidence. 3d. That the court erred in allowing the portion of the argument of Daniel A. Greene, Esq., to which exceptions were reserved. 4th. The court erred in its rulings in reference to the argument of B. M. Allen, Esq. This motion was overruled, and judgment was rendered for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

MOUNTJOY & TOMLINSON and WALKER, PORTER & WALKER, for appellants, cited *Birmingham National Bank v. Bradley,* 103 Ala. 109; *Ib.,* 108 Ala. 205.

DANIEL A. GREENE, B. M. ALLEN and O. W. UNDER-WOOD, *contra.*—The argument of counsel to the jury, which was objected to by the plaintiff was within the bounds of legitimate argument, as laid down by this court.—*Cross v. State,* 68 Ala. 476; *Dollar v. State,* 99 Ala. 236; *B. M. R. R. Co. v. Harris,* 98 Ala. 326; *Green v. State,* 97 Ala. 59; 2 Amer. & Eng. Encyc. of Pleading & Practice, 714 and note 2; 715.

2. The general affirmative charge was properly refused by the court.—*Birmingham Nat. Bank v. Bradley,* 108 Ala. 205; *Hall v. Posey,* 79 Ala. 84; *Sanders v. Edmonds,* 98 Ala. 157; *Bromley v. Bir. Min. R. R. Co.,* 95 Ala. 397.

3. The motion for new trial was properly overruled. Authorities *supra; Cobb v. Malone & Collins,* 92 Ala. 630.

McCLELLAN, J.—The issue below was whether the paper confessedly issued by the Gate City National Bank was altered as to amount and payee before it was presented to and cashed by the Birmingham National Bank. Leaving out of view for the moment the fact that the paper itself bears no evidence of alteration, it is shown about as clearly and conclusively as the nature of the case admitted of and as oral testimony and attendant circumstances could show, that the check as issued was for the sum of two dollars, payable to James Fix, and that its amount was not indicated by figures cut through the paper, and that when presented to the Birmingham National Bank, it was for four thousand dollars, payable to

John G. Bradley, and its amount was indicated both in its body and by figures cut through the paper. If the case rested here, the affirmative charge, of course, would have been given for the plaintiff. But against the case thus made is interposed the fact that the paper itself gives no indication whatever that the name of John G. Bradley has been substituted for that of James Fix as payee, or that the words "four thousand dollars" have been substituted for the words "two dollars," as the amount for which it was drawn, or that the figures "4000" have been cut through the paper since it was issued; and the argument upon this evidence is that the alleged alterations could not have been made without leaving some indication or trace of the change wrought by them upon the paper, and hence that no alteration has in fact been made. This theory would be conclusive against the plaintiff if it could be said as of common knowledge, or if the evidence showed, that such an alteration could not be made without leaving some indication or trace of the change or that the paper had been tampered with. On the other hand, if it could be affirmed as of common knowledge that a paper such as this could be altered as this one is claimed to have been altered, by such means and in such way as to defy detection upon all the tests to which this paper has been subjected, then the fact that it has withstood those tests and defied detection would be of no probative force against the oral testimony of witnesses and the attendant circumstances going with great clearness to show that the alterations had in fact been made: the thing was done, in other words, if the evidence shows it could have been done, and the plaintiff would still be entitled to an affirmative instruction. We, however, do not assume to have any common knowledge upon the point. But if the evidence adduced upon it was free from conflict and diverse inference in support of the feasibility of obliterating the original writing and substituting therefor new names, words and figures, without leaving any evidence on the paper of the change, the case for alteration would still be made out if the jury believed the evidence. The evidence in this case does not come up to this measure: it cannot be said to be free from conflict in establishing the practicability of such alteration being made without leaving any sign of the operation; and so plaintiff was

not entitled to the general charge.   But, in our opinion, the evidence for the plaintiff, to the effect that such alterations were practicable and could be made by the use of chemicals in the obliteration of the original writing and the substitution therefor of other writing so as to defy detection, was so decided and overwhelming in its preponderance against the contrary conclusion reached by the jury as to carry clear conviction that the verdict was wrong and unjust, and should have been set aside on plaintiff's motion for a new trial.   There was indeed a general concurrence and concensus of opinion on the part of all but one of the numerous witnesses examined as experts both by the plaintiff and defendant, that it was entirely feasible and practicable for alterations to be so made on plain white paper like that of this check, and the witnesses who were shown to be most expert and to have had the largest experience deposed to such feasibility as matter of fact as well as matter of opinion.   The one witness, Mr. Phillips, who entertained a different opinion does not appear to have had the training and experience possessed by plaintiff's expert witnesses, nor is his testimony as positive and direct as theirs, nor does it appear to go upon all the conditions involved in the question as presented in this case. The paper of this check was perfectly white, there was no coloring matter whatever in it.   On it had been printed prior to the time at which it was drawn all the words necessary to a check except the date, amount, and the names of drawer and payee.   Phillips' opinion seems to be that chemicals applied to take written words out of otherwise *plain* white paper would disturb the surface of the paper and abrade the glaze of it so as to indicate that the paper had been tampered with.   This opinion appears to have had reference to paper which had never gone through a printing press.   For the plaintiff it was shown that the process of printing to which this particular paper had been subjected had the effect of dampening the whole surface of the paper and disturbing or abrading its glaze precisely as the application of chemicals to a virgin surface would dampen, disturb and abrade it ; and that having been thus dampened in the process of printing, and the result which might otherwise be wrought by the chemicals having been attained by that process, the application of the chemicals would

produce no effect whatever on the appearance of the paper where writing is taken out of it. This evidence impresses us with its reasonableness, and we do not understand even the witness Phillips to gainsay the conclusion to which it goes, or to testify at all as to the effect, in respect of disturbing surface, the application of obliterating chemicals would have upon pure white paper which had passed through a printing press. And upon these considerations we base our conclusion, after allowing all reasonable presumptions in favor of the correctness of the verdict of the jury, that the preponderance of the evidence against the verdict is so decided as to involve the conviction that it is wrong and unjust. And we, therefore, hold that the trial court erred in overruling plaintiff's motion for a new trial.

The question on the trial was not whether the check appeared on its face to have been altered. To the contrary, it was conceded that it did not so appear. But the real, and, indeed, the only inquiry was, whether a check could be altered in the way it was claimed this one had been by the use of gas, or acids, or other chemicals without afterwards bearing any evidence of alteration. This was a question for solution by expert evidence from the mouths of witnesses who knew something about the effect of chemicals, in the connection under inquiry. A man without knowledge on this subject is not a competent witness upon it, however much experience he may have had in the examination of checks and other papers with a view to determining whether they in fact gave any indication, in and of themselves, upon their faces of having been tampered with. However expert such persons may become in the interpretation of a paper by everything that appears on its face, they yet may be as entirely ignorant of the means and processes by which writing is taken out of paper, and as to whether it can be taken out so as to leave no sign or token that any writing other than that presently appearing on the paper had ever been there, as a person having no experience or special information in either respect. Hence, we think the court erred in allowing certain of defendant's witnesses, bank tellers and the like, who had no expert knowledge on the subject, to be asked their opinion as to whether such an alteration could be made. Their answers, however, do not appear to have been of a character to prejudice the plaintiff.

[Diefenbach v. Vaughan.]

The statement of defendant's attorney in argument to the jury "that Lewis Redwine, the cashier of the Gate City National Bank, was ominously silent, that interrogatories were propounded to him which he had not answered, or if he had answered, were not read to the jury by counsel for the plaintiff," should have been excluded and the jury cautioned against giving any effect to it. The fact that interrogatories had been propounded to Redwine, if it was a fact, was not in evidence nor in the case at all except as it was thus lugged in by this unauthorized statement of counsel.

The court was similarly in error in forcing plaintiff's counsel to object to the reading of the interrogatories which had been propounded to Redwine. The counsel who asked the court's permission to read these interrogatories to the jury should have been told by the court of its own motion that he could neither read them to nor refer to them in the presence of the jury. Through the course adopted by the court counsel for defendant secured all the advantage that could have enured to his client from the reading of this wholly extraneous matter to the jury, if not more indeed.

There was no error in allowing counsel to refer to the possibility of ultimate liability on the part of the Gate City Bank to the Birmingham National Bank. If the check was not raised, the former bank would have to pay it, and this legal conclusion was proper to be brought forward in argument as bearing upon the credibility of the officials of that bank as witnesses in this case.

Reversed and remanded.